## EMILY DAVEY vs. GREENFIELD AND TURNER'S FALLS STREET RAILWAY COMPANY.

Franklin.   September 18, 1900. — October 19, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Personal Injuries — Negligence — Stopping Car an Invitation to enter it — Recalling Invitation to enter — Starting Car without Signal.*

At the trial of an action for personal injuries sustained by the plaintiff, a woman, while attempting to board an open electric car of the defendant, the evidence for the plaintiff tended to show that, as the car, going northerly on a public way, approached an intersecting street, the plaintiff and another woman, accompanied by a child, stepped from the easterly sidewalk of the way on which the car was running and walked diagonally and northwesterly toward the car with the intention of boarding it; that the way at that point was substantially clear of people except upon the sidewalk; that the other woman, being in advance of the plaintiff, signalled to the motorman, who was looking toward them and who, as they supposed, stopped the car at the signal; that the other woman boarded the car and took a seat, the plaintiff assisted the child to climb in, and then, facing toward the front of the car, simultaneously stepped with her left foot on the running board and grasped with her left hand the iron handle or brace at the end of, and on a level with, a seat into which she intended to go; that as she stepped upon the running board the car started rapidly and with a jerk, without a signal from the conductor, and the plaintiff swung around so that she was bumped against the end of the seat into which she intended to go, her foot slipped from the running board, she fell to her knees on the board, still grasping the handle at the end of the seat, and was finally assisted into the car, fell upon the floor thereof, and was severely injured. The evidence for the defendant tended to show that neither the motorman nor the conductor saw the plaintiff or any of her party until they were seated in the car; that the conductor gave the usual signal to start after looking, from his position on the left front running board, on both sides of the car, and seeing no one trying to get on; and that the car started gently and slowly. The defendant conceded at the trial that the street was a proper place in which to take a car of an electric street railway, and that if a street railway company stops its car in the street it invites all persons to become passengers who present themselves then and there in proper condition and manner, but contended that the invitation is withdrawn when the car is started or when the signal to start is given. The judge instructed the jury that when a car stops on the street to receive passengers it invites persons to enter the car and become passengers, and that until the invitation is recalled any person actually taking hold of the car and beginning to enter it is a passenger; that the invitation may be recalled before the car starts, and that there are circumstances under which such recall is justifiable; that the conductor recalls the invitation when he gives the signal for the car to start, but that he should not do so until he has reason to believe that all persons desirous of boarding the car have reached it in such a way that it is safe for the car to move; that it is

not required as matter of law that the conductor on all occasions should know that no person is seeking to enter the car when he gives the signal to start; but if nothing more is shown than the fact that the car had stopped to receive passengers and that persons are seeking to enter, it is his duty to know whether any are entering it when he gives the signal to start; that if the motorman started the car without having received a signal from the conductor his action is to be treated in the same manner as if he had received a signal, and that if it would have been negligence on the part of the conductor to have given the signal and to have had the car started at that moment, it was negligence on the part of the motorman to start it at that moment. *Held*, that the instructions were sufficiently favorable to the defendant.

TORT, for personal injuries sustained by the plaintiff while attempting to get on an open electric car. At the trial in the Superior Court, before *Mason*, C. J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*F. L. Greene*, (*W. A. Davenport* with him,) for the defendant.
*W. Hamilton*, for the plaintiff.

LATHROP, J.   The evidence for the plaintiff tended to show that as an open electric car of the defendant approached Ames Street in Greenfield, going northerly on Federal Street, one Mrs. Weyraugh, her boy about seven years old, the plaintiff and her daughter, a girl of eighteen, stepped from the easterly sidewalk of Federal Street, and walked diagonally and northwesterly towards the car tracks with the intention of boarding it; that the street at this point was substantially clear of people except upon the sidewalk; that Mrs. Weyraugh was in advance of the others and signalled the motorman by holding up her hand; that the motorman was looking towards her and the plaintiff; that they supposed he saw them; that the car stopped as they thought at the signal; that Mrs. Weyraugh boarded the car and took her seat; that the plaintiff then assisted the boy to climb in; and that then the plaintiff, with her face towards the front of the car, stepped with her left foot on to the running board, at the same time taking hold with her left hand of an iron handle or brace at the end of and on the level of a seat, into which she intended to go; that as the plaintiff stepped on to the running board the car started forward with a jerk and rapidly, without any signal from the conductor; that she swung round so that she was bumped against the end of the seat into which she was going; that her foot slipped from

the running board, so that she fell to her knees on the board, still holding with her left hand to the iron above mentioned; and that finally she was assisted into the car, falling upon. the floor thereof, and was severely injured.

The evidence for the defendant tended to show that neither the motorman nor the conductor saw the plaintiff or any of her party until they were seated in the car; that the conductor gave the usual signal to start; and the conductor testified that before doing so he looked from the position he was in, on the left front running board, on both sides of the car, and saw no one trying to get on; that he then gave the signal to start, and that the car started gently and slowly.

The case comes before us on exceptions to the refusal of the court to give three requests of the defendant, except as appears in the charge. These requests were as follows: " (1) That a person endeavoring to enter an electric car without the knowledge of some person engaged in the running thereof, does not become a passenger until standing or seated in some portion of the car intended for the occupation of passengers while the car is in motion, or until his effort or presence is known to, or in the exercise of a proper performance of his duties, ought to be known to some one of the persons engaged in the running of the car. (2) That if an injury happens to a person from the starting of an electric car as she is entering the same, there can be no recovery from the company operating such car unless its servants in charge thereof omitted some reasonable precaution to assure themselves that no person would be endangered by the starting thereof. (3) That it is not, as matter of law, negligent for a motorman to start an electric car, which he has stopped to take on passengers seen by him, without receiving a signal from the conductor so to do."

We proceed to consider these in their order.

1. The defendant concedes that a street, in the case of an electric street railway, is a proper place to take a car, because it is the necessary place for persons to present themselves to be carried. It also concedes that, when a street railway company stops its car in the street, it invites all to become passengers who present themselves then and there in proper condition and manner. It contends, however, that this invitation may be

withdrawn, and that it is withdrawn when the car is started, or when the signal to start is given. It further contends that the evidence shows, without contradiction, that neither the motorman nor the conductor saw the plaintiff. The jury were instructed by the court below in accordance with the concessions of the defendant, and were further instructed : " When a car stops on the street to receive passengers it invites persons to enter the car and become passengers. Until that invitation is recalled, any person actually taking hold of the car and beginning to enter it is a passenger, and entitled to the protection of the principles that I have stated. It is true that the invitation may be recalled before the car starts. There may be circumstances under which the principle itself would require the recalling of the invitation. There may be such a pressure to enter the car that a load which it would be unsafe to move is accumulating, and it would be the duty of those in charge of the car to see that no more passengers should be received. The conductor does recall the invitation when he gives the signal for the car to move on, and he should not do that until he has reason to believe that all who have applied have reached the car in such a way that it is safe for the car to move. Nothing else appearing, no reason being shown why the conductor cannot know whether any person is attempting to board the car, it can be said that it is his duty to know. I cannot say that there are no circumstances that would, as a matter of law, justify him in starting, though, as a matter of fact, some one was at the time attempting to board the car. If he had stopped the car in a dark night, and all the passengers known by him to be seeking to enter had entered, and he took pains to examine on the outside to see if any others were seeking to enter, and using all the means at his disposal to learn, he learned of none, he would be entirely justified in giving the signal to start, though it might happen that in the darkness of the night some one was seeking to enter. So I do not state to you, as a matter of law, that he must on all occasions, and on every occasion, know that no one is seeking to enter when he gives the signal to start; but when nothing is shown more than the fact that the car had stopped to receive passengers, and that persons were seeking to enter, it is his duty to know whether any are entering at the time he

gives the signal for starting. Now, unless there was some negligence on the part of the defendant, and I mean by negligence of the defendant negligence of any of its agents who are engaged in the management of the car, unless it is proved to your satisfaction that there was some negligence on their part, there can be no recovery by this plaintiff."

We think these instructions were sufficiently favorable to the defendant, and that no exception lies to the refusal to give the instruction requested. The accident happened shortly before noon in July. We cannot consider the case on the supposition that the testimony of the conductor and the motorman was to be taken as true. These were witnesses for the defendant, and it was for the jury to say what weight was to be given to their testimony. Moreover, the jury took a view of the car, and may have found that the testimony of the conductor was not true.

The case differs essentially from *Pitcher* v. *People's Street Railway*, 154 Penn. St. 560, and 174 Penn. St. 402. In that case a boy, without signalling, attempted to board a horse car which had stopped to let off a passenger. He had one hand on the rail of the front platform, behind the driver, and, when about to place his foot upon the step, was thrown down by the sudden starting of the car. He was not seen by either the conductor or the driver. Under these circumstances it was held that he was not a passenger. In the present case the jury might well have found that a signal was given to the motorman; that he stopped the car in obedience thereto; and that while the plaintiff was partly on the car the conductor gave the signal to start without looking to see whether the plaintiff was wholly on the car or not. There can be no doubt that on the evidence for the plaintiff she was entitled to go to the jury on the issues whether she was a passenger, whether she was in the exercise of due care, and whether the defendant was guilty of negligence. *Gordon* v. *West End Street Railway*, 175 Mass. 181, and cases cited.

2. As to the second request the court instructed the jury as follows: "I should say a word upon the effect of the motorman's starting the car without having received a signal from the conductor. I do not say to you, as matter of law, that that would be negligence, but the starting of the car by the motor-

man, without having received the signal from the conductor, is to be treated just as if he had had the signal. That is, if it would have been negligence on the part of the conductor to have given the signal, and to have had the car started at that moment, then it was negligence on the part of the motorman to start it at that moment. In other words, the corporation was negligent if that car was started when passengers were in the act of entering the car, and were in such a position that they were injured by its starting, whether its starting at the moment was due to the improper action of the conductor in giving the signal, or to the improper action of the motorman in starting without it."

We are of opinion that the charge upon this point was also sufficiently favorable to the defendant on the evidence in the case. We have already mentioned the evidence in considering the first point, and it is not necessary to repeat it.

3. The third request is not argued, and it in fact was given.

*Exceptions overruled.*